Steven **BRUA**, et al., **Respondents**,

v.

The **MINNESOTA JOINT UN-DERWRITING ASSOCIA-TION, Appellant.**

No. A07–1866.

Supreme Court of Minnesota.

Feb. 11, 2010.

Patricia Yoedicke, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN; and David W. VanDerHeyden, VanDerHeyden and Ruffalo, P.A., Rochester, MN, for respondents.

John M. Bjorkman, Paula Duggan Vraa, Larson King, L.L.P., St. Paul, MN, for appellant.

Mark J. Condon, Stacey A. Molde, Johnson & Condon, P.A., Minneapolis, MN, for amicus curiae Minnesota Defense Lawyers Association.

Michael C. Snyder, Meshbesher & Spence, Ltd., Minneapolis, MN, for amicus curiae Minnesota Association for Justice.

## OPINION

ANDERSON, G. BARRY, Justice.

Michael Brua died in a single-car accident after drinking at the Bend in the Road bar in December 2003. An action under the Minnesota Civil Damages Act, Minn.Stat. § 340A.801 (2008), was brought against the Bend in the Road bar and its proprietors, who in turn made a claim for coverage from their insurance carrier, appellant the Minnesota Joint Underwriting Association (MJUA). A dispute arose over the extent of insurance coverage under the relevant policy for the claims for pecuniary loss suffered by Brua's family. As part of a settlement agreement, Bend in the Road

and its proprietors assigned to the Bruas the right to bring a declaratory action to determine the extent of insurance coverage. As a result of the settlement agreement, respondents Steven Brua, Roxanne Brua, and Travis Brua brought an action against MJUA to determine coverage for pecuniary loss. The primary issue in the case was whether pecuniary loss coverage was subject to a $50,000 per person, $100,000 per occurrence limit, as MJUA contended, or whether pecuniary loss coverage was only subject to the $300,000 aggregate policy limit, as the Bruas contended. The district court granted summary judgment in favor of the Bruas, and the court of appeals affirmed. We reverse.

The material facts in this case are undisputed. On December 30, 2003, Michael Brua, after consuming alcohol at the Bend in the Road bar, was involved in a single-car accident and died as a result of his injuries. On December 19, 2005, respondents Steven Brua (Michael's father), Roxanne Brua (Michael's mother), and Travis Brua (Michael's brother), brought an action against Bend in the Road and its proprietors. The Bruas alleged that the defendants were liable under Minnesota's Civil Damages Act, Minn.Stat. § 340A.801, for illegally selling alcohol to Michael Brua. The Bruas alleged that they suffered loss of means of support, property damage, and other pecuniary loss. They did not make bodily injury claims. Although the Bruas initially sought damages for loss of means of support, they ultimately dropped those claims, making property damage and pecuniary loss the only damages sought. At the time of Michael's death, Bend in the Road and its proprietors held a liquor liability insurance policy issued by MJUA.

The parties to the action eventually reached a settlement. Under the terms of the agreement, MJUA agreed to pay the Bruas $108,000—representing a payment of $100,000 for pecuniary loss and $8,000 for property damage. During the course of the settlement negotiations, however, the parties were unable to agree on the total amount of insurance coverage available to Bend in the Road and its proprietors under the MJUA policy for the pecuniary loss claims asserted by the Bruas. MJUA argued that its liability for pecuniary loss was limited to $100,000 under the terms of the policy; the Bruas argued that only the policy's $300,000 policy period aggregate limit applied to their pecuniary loss claims. As part of the settlement agreement, the original defendants (Bend in the Road and its proprietors) assigned to the Bruas "any rights that the Defendants may have against MJUA in connection with the Brua action." The settlement agreement further stated that the Bruas will "have standing to bring a declaratory judgment action against MJUA," and "the only issue [to be resolved] is the limits available under the MJUA policy for pecuniary loss." The agreement also provided that "[i]f [the Bruas] prevail in the declaratory judgment action ... the MJUA will pay an additional sum of $150,000 to [the Bruas] for pecuniary loss. If MJUA prevails, the [Bruas] will receive no further sums from any other source in connection with the death of Michael Brua...."

*Statutory Framework: The Civil Damages Act and Insurance Requirements*

Minnesota's Civil Damages Act, known colloquially as the Dram Shop Act, provides that

[a] spouse, child, parent, guardian, employer, or other person injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action

in the person's own name for all damages sustained against a person who caused the intoxication of that person by illegally selling alcoholic beverages.

Minn.Stat. § 340A.801, subd. 1.

Another statutory provision requires establishments holding liquor licenses to demonstrate proof of financial responsibility for potential liability: "No retail license may be issued, maintained or renewed unless the applicant demonstrates proof of financial responsibility with regard to liability imposed by section 340A.801." Minn. Stat. § 340A.409, subd. 1 (2008). The statute goes on to state that

> [t]he minimum requirement for proof of financial responsibility may be given by filing:
>
> (1) a certificate that there is in effect for the license period an insurance policy ... providing at least $50,000 of coverage because of bodily injury to any one person in any one occurrence, $100,000 because of bodily injury to two or more persons in any one occurrence, $10,000 because of injury to or destruction of property of others in any one occurrence, $50,000 for loss of means of support of any one person in any one occurrence, and $100,000 for loss of means of support of two or more persons in any one occurrence;
>
> (2) a bond of a surety company with minimum coverages as provided in clause (1); or

(3) a certificate of the commissioner of finance that the licensee has deposited with the commissioner of finance $100,000 in cash or securities which may legally be purchased by savings banks or for trust funds having a market value of $100,000.

*Id.* In addition, the statute provides that "[a]n annual aggregate policy limit for dram shop insurance of not less than $300,000 per policy year may be included in the policy provisions." *Id.*

Another statute outlines the function and purpose of MJUA, stating that MJUA was "created to provide insurance coverage to any person or entity unable to obtain insurance through ordinary methods if the insurance is required by statute." Minn.Stat. § 62I.02, subd. 1 (2008). In addition, the law requires that liquor liability insurance policies issued by MJUA "contain at least the minimum coverage required by section 340A.409, subdivision 1." Minn.Stat. § 62I.02, subd. 4 (2008).

### The MJUA Policy

The MJUA insurance policy issued to Bend in the Road stated that "[w]e will pay on your behalf, subject to the coverage limit afforded under this contract for each occurrence, all sums you shall become legally obligated to pay as damages because of injury as a result of the sale ... of intoxicating liquor." The policy defined "damages" to include "all damages recoverable under Minnesota Statute 340A.801." On the declarations page, the policy contained the following limitations on liability:

| | | |
|---|---|---|
| BODILY INJURY | $ 50,000 | EACH PERSON |
| | $100,000 | EACH OCCURRENCE |
| PROPERTY DAMAGE | $ 10,000 | EACH OCCURRENCE |
| LOSS OF MEANS OF SUPPORT | $ 50,000 | EACH PERSON |
| | $100,000 | EACH OCCURRENCE |
| ANNUAL AGGREGATE | $300,000 | ANNUALLY |

An amendatory endorsement to the MJUA policy defined "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any

of these, and pecuniary loss." The endorsement also defined "pecuniary loss" as "loss of aid, advice, comfort, and protection that has a money value other than loss of means of support, resulting from a person's death or recoverable under applicable law." [1]

### Complaint and Decisions of the District Court and Court of Appeals

On April 12, 2007, the Bruas filed a complaint against MJUA seeking the declaratory judgment described in the settlement agreement. Specifically, the Bruas argued that the provision of the policy defining "bodily injury" as including "pecuniary loss" was void and unenforceable. Therefore, according to the Bruas' argument, only the policy's $300,000 aggregate annual limit applied to their claims of pecuniary loss.

Both parties moved for summary judgment and the district court granted the Bruas' motion and denied MJUA's motion. The district court held that Minn.Stat. § 340A.409, subd. 1, requires insurance companies to provide minimum coverage of $100,000 per occurrence for bodily injury, and that true "bodily injury" must be the only type of damage subject to that fund in any claim. Consequently, the district court agreed with the Bruas that the policy provision defining bodily injury as including pecuniary loss impermissibly diluted the statutorily required minimum coverage for bodily injury claims, and was therefore void and unenforceable.

MJUA appealed, and the court of appeals affirmed, but on different grounds. *Brua v. Minn. Joint Underwriting Ass'n*, No. A07–1866, 2008 WL 4705427, at *3 (Minn.App. Oct. 28, 2008). The court of appeals concluded that MJUA failed to offer the minimum required amount of insurance to pay claims for pecuniary loss. The court of appeals reasoned that

> [i]f Minn.Stat. §§ 340A.409, subd. 1, and 340A.801 are to be construed to give effect to all of their provisions, the requirement that "proof of financial responsibility with regard to liability imposed by section 340A.801" must be read, at a minimum, to include pecuniary loss damages as a separate item of recovery subject to the aggregate limits required by Minn.Stat. § 340A.409, subd. 1.

*Id.* In other words, the court of appeals read the insurance requirement found in Minn.Stat. § 340A.409, subd. 1, as statutorily mandating coverage for claims of pecuniary loss, subject only to the $300,000 aggregate annual limit.

MJUA sought review of the court of appeals' decision, and we granted that petition.

### I.

MJUA first argues that, contrary to the court of appeals' reasoning, Minn.Stat. § 340A.409, subd. 1, does not require coverage for pecuniary loss. We agree.

A district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. An appellate court "review[s] a grant of summary judgment to determine (1) if there are genuine issues of material fact and (2) if the district court erred in its application of the law." *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367,

---

1. The endorsement also replaced the words "Annual Aggregate" with "Policy Period Aggregate Limit." This policy's contract period was from September 1, 2003, to July 1, 2004.

371 (Minn.2008) (citation omitted) (internal quotation marks omitted). Appellate courts review district court interpretations of insurance contracts and statutes de novo. *Stewart v. Ill. Farmers Ins. Co.*, 727 N.W.2d 679, 683 (Minn.App. 2007). Our goal when interpreting statutory provisions is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008); *accord Educ. Minn.-Chisholm v. Indep. Sch. Dist. No. 695*, 662 N.W.2d 139, 143 (Minn.2003). If the meaning of a statute is unambiguous, we interpret the statute's text according to its plain language. *Molloy v. Meier*, 679 N.W.2d 711, 723 (Minn.2004). If a statute is ambiguous, we apply other canons of construction to discern the legislature's intent. *See* Minn.Stat. § 645.16.

According to MJUA, the text of section 340A.409, subdivision 1, requires minimum insurance coverage for three—and only three—categories of damages: bodily injury, injury to or destruction of property, and loss of means of support. This provision, in MJUA's view, conclusively establishes that the statute does not require any insurance coverage for claims of pecuniary loss.

The Bruas—and the court of appeals—take a different view. Although the court of appeals acknowledged that the statute was silent on the issue of pecuniary loss,[2] the court nevertheless found that coverage was required because section 340A.409, subdivision 1, requires "proof of financial responsibility with regard to liability imposed by section 340A.801." *Brua*, 2008 WL 4705427, at *3. Section 340A.801, as previously discussed, creates a right of action for pecuniary loss.

We agree with MJUA that section 340A.409, subdivision 1, does not require coverage for pecuniary loss. Minnesota Statutes § 340.95, the predecessor of Minn.Stat. § 340A.801, was amended in 1982 to allow recovery for "pecuniary loss." *See* Act of Mar. 22, 1982, ch. 528, § 7, 1982 Minn. Laws 973, 978 (codified as amended at Minn.Stat. § 340A.801). The law establishing minimum insurance coverage for liquor establishments, Minn.Stat. § 340.11, the predecessor of Minn.Stat. § 340A.409, was also amended in 1982 to specify the requirements for proof of financial responsibility, but the amendment

2. The statute does not define pecuniary loss. We have previously stated, however, that pecuniary loss includes loss of "advice, counsel, and loss of companionship." *Jones v. Fisher*, 309 N.W.2d 726, 730 (Minn.1981); *see also Gravley v. Sea Gull Marine, Inc.*, 269 N.W.2d 896, 901 (Minn.1978) (noting that pecuniary loss includes "loss of advice, comfort, assistance, and protection"). The sample jury instructions state that "[p]ecuniary loss is financial loss, but also includes loss of counsel, guidance and aid." 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil*, CIVJIG 45.45 (5th ed. 2006).

"Bodily injury" in the context of the Civil Damages Act has the same meaning as in the general personal injury context. *See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil*, CIVJIG 45.55 (5th ed. 2006). Bodily injury damages include compensation for pain, disability, disfigure-

ment, embarrassment, and emotional distress. 4A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil*, CIVJIG 91.10 (5th ed. 2006). Bodily injury damages are not recoverable where, as here, death occurs as a result of the injuries suffered, and plaintiffs do not seek such damages. The only damages claimed by the Bruas in this case are pecuniary loss and property damage.

"Means of support" refers to financial support that, but for the accident, would have been provided to the plaintiff by the injured or deceased person. *See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil*, CIVJIG 45.45 ("A person's means of support has been damaged when the usual source of support has been [ (and)(or) will be] lost or reduced."). The Bruas initially sought damages for loss of means of support, but ultimately dropped those claims.

did not require coverage for pecuniary loss. *See* Act of Mar. 22, 1982, ch. 528, § 2, 1982 Minn. Laws, 973, 974–75 (codified as amended at Minn.Stat. § 340A.409). To date, Minn.Stat. § 340A.409 has not been amended to require coverage for pecuniary loss in order to show financial responsibility. This may or may not be a legislative oversight, but it is indisputably the way the law is written. We may not disregard the clear and unambiguous language of the statute. *Int'l Bhd. of Elec. Workers, Local No. 292 v. City of St. Cloud,* 765 N.W.2d 64, 68 (Minn.2009) (citing Minn.Stat. § 645.16).

Further, the court of appeals' reasoning that section 340A.409, subdivision 1, implies mandatory coverage for pecuniary loss is unpersuasive. It is true that section 340A.409, subdivision 1, states that liquor establishments must demonstrate "proof of financial responsibility with regard to liability imposed by section 340A.801," which potentially includes liability for pecuniary loss. But the court of appeals ignored the very next section of the statute, which provides that "[t]he *minimum requirement* for proof of financial responsibility may be given by filing" proof of insurance coverage in the listed amounts. Minn.Stat. § 340A.409, subd. 1 (emphasis added). In other words, the statute says "these are the minimum requirements for compliance" and then mentions nothing about insuring against claims of pecuniary loss. The court of appeals' conclusion also creates the uncomfortable result that, under the court's reasoning, the only limitation on the amount of insurance required by law for pecuniary loss claims is the $300,000 aggregate annual total. It is unlikely that the legislature intended the minimum coverage for pecuniary loss to be dramatically greater than the other categories of damages.

We conclude that while section 340A.801 makes recovery for pecuniary loss possible, neither section 340A.801 nor section 340A.409 makes pecuniary loss coverage under a dram shop insurance policy mandatory. Thus, the insurance coverage required to demonstrate financial responsibility under Minn.Stat. § 340A.409, subd. 1, is not coextensive with liability under Minn.Stat. § 340A.801.

II.

Our conclusion that section 340A.409, subdivision 1, does not require coverage for pecuniary loss, however, does not end our analysis. MJUA argues that the district court erred in its application of the law when it held that the policy provision defining bodily injury as including pecuniary loss impermissibly diluted the statutorily required minimum coverage for bodily injury claims, and was therefore void and unenforceable.

At the outset, the parties agree on two central points: first, that MJUA's policy covers claims of pecuniary loss; and second, that only two provisions in the policy potentially limit the scope of MJUA's coverage for pecuniary loss—the $300,000 policy period aggregate limit, and the $50,000 per person and $100,000 per occurrence limit for bodily injury, which is defined in the policy to encompass claims of pecuniary loss.

A.

◼ MJUA first argues[3] that it is free to combine bodily injury and pecuniary

---

3. At oral argument, MJUA argued that because the Bruas never asserted a claim for bodily injury, the Bruas lack standing to challenge the validity of the provisions in the policy governing bodily injury claims. The Bruas, according to MJUA, are therefore outside the zone of interest contemplated by the portion of Minn.Stat. § 340A.409, subd. 1,

loss into a single coverage limit because the relevant statutory provisions permit blending of any required coverages. Relying primarily on two federal district court cases and an agency interpretation, MJUA argues that Minn.Stat. § 340A.409, subd. 1, does not require cumulative minimum amounts of coverage for the enumerated categories of recoverable damages. Rather, according to MJUA's theory, the minimum amounts of coverage for each category of damages outlined in Minn.Stat. § 340A.409, subd. 1, are *coextensive*—in other words, an insurer could legally limit its liability to $100,000 for all listed categories of damages. Following this argument to its conclusion, if the statute permits blending the coverage for all enumerated damages categories, then it follows that the statute is not violated by blending the coverage for bodily injury (a mandatory category) and pecuniary loss (a non-mandatory category). The Bruas respond that Minn.Stat. § 340A.409, subd. 1, requires separate, cumulative minimum amounts of insurance for each discrete category of damages.

Supporting MJUA's argument, two federal district court cases have held that Minn.Stat. § 340A.409, subd. 1, does not require cumulative minimum amounts of coverage for the enumerated categories of recoverable damages. In *Scottsdale Insurance Co. v. Wohlsol, Inc.*, an insurance company brought a declaratory judgment action seeking to enforce its $100,000 limitation of liability in a case brought under the Civil Damages Act. No. 04–4980, 2005 WL 2972997, at *1 (D.Minn. Nov. 7, 2005). Unlike this case, the policy at issue in *Wohlsol* contained an "Each Common Cause Limit," meaning that the policy stated that the insurance company would pay no more than $100,000 for all injuries resulting from the sale of alcohol to any one person. *Id.* at *4. The defendants argued that Minn.Stat. § 340A.409, subd. 1, imposed a minimum limit of $210,000 for any one occurrence—$100,000 for bodily injury, $10,000 for property loss, and $100,000 for loss of means of support. *Wohlsol*, 2005 WL 2972997, at *4. The defendants further argued that the "Each Common Cause Limit" violated Minn.Stat. § 340A.409, subd. 1, and was therefore void and unenforceable. *See Wohlsol*, 2005 WL 2972997, at *4–5 & n. 5; *see also Roering v. Grinnell Mut. Reinsurance Co.*, 444 N.W.2d 829, 833 (Minn.1989) ("[C]ontract provisions which conflict with statutory law will not be enforced.").

The *Wohlsol* court agreed with the insurance company, holding that "[t]he statute does not require insurers to specify a

mandating minimum coverage for bodily injury. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474–75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

But MJUA's argument overlooks the key fact that Bend in the Road and its proprietors assigned to the Bruas "any rights that the Defendants may have against MJUA in connection with the Brua action," and MJUA agreed in its settlement with the Bruas that the Bruas would have standing in a declaratory judgment action. We have previously stated that "[a]n assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment."

*Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 803 (Minn.2004) (citing *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 13 (Minn.2002)). There is no doubt that Bend in the Road and its proprietors would have had standing to bring a declaratory action against MJUA to determine the extent of coverage and whether that coverage complied with Minnesota law. The potential legal and financial consequences to Bend in the Road and its proprietors for carrying less than the minimum required insurance are self-evident. Therefore, because the Bruas now stand in Bend in the Road's shoes, the Bruas have standing to challenge the validity of the MJUA policy.

minimum limit for each individual category of damages and instead requires a minimum limit of $100,000 to satisfy claims for all of the various components of injury." *Wohlsol,* 2005 WL 2972997, at *5. The court reasoned that requiring liquor licensees to carry $210,000 in insurance would be "an incongruous result" because the licensees could choose to prove their financial responsibility by filing a certificate of the commissioner of finance that the licensee has deposited with the commissioner of finance $100,000 in cash or securities. *Id.* (analyzing Minn.Stat. § 340A.409, subd. 1).

In addition, the *Wohlsol* court deferred to an interpretation of Minn.Stat. § 340A.409, subd. 1, found on the website of the Minnesota Department of Public Safety. *See Wohlsol,* 2005 WL 2972997, at *6; *see also Mammenga v. State Dep't of Human Servs.,* 442 N.W.2d 786, 792 (Minn.1989) (stating that " '[w]hen the meaning of a statute is doubtful, courts should give great weight to a construction placed upon it by the Department charged with its administration' " (quoting *Krumm v. R.A. Nadeau Co.,* 276 N.W.2d 641, 644 (Minn.1979))). The website states that "[t]he minimum limits of the policy are $100,000 and a $300,000 aggregate per policy year per licensed location." Minn. Dep't of Pub. Safety, Steps to Follow to Apply to State of Minnesota for a Liquor License, http://www.dps.state.mn.us/alcgamb/alcenf/process.htm (last visited Jan. 28, 2010); *see also Wohlsol,* 2005 WL 2972997, at *6 (citing the Department of Public Safety's website). The federal district court in *Peterson v. Scottsdale Insurance Co.,* 409 F.Supp.2d 1139, 1147–48 (D.Minn.2006), confronted the same issue as in *Wohlsol* and reached the same result.

The Bruas argue, and both the district court and the court of appeals agreed, that *Wohlsol* and *Peterson* were wrongly decided to the extent that both cases held that

Minn.Stat. § 340A.409, subd. 1, does not require insurers to specify a minimum limit for each individual category of damages and instead requires a minimum limit of $100,000 to satisfy claims for all of the various components of injury. According to the Bruas, the plain statutory language of Minn.Stat. § 340A.409, subd. 1, dictates that each category of coverage must be cumulative. *See* Minn.Stat. § 340A.409, subd. 1 (requiring "at least $50,000 of coverage because of bodily injury to any one person in any one occurrence, $100,000 because of bodily injury to two or more persons in any one occurrence, $10,000 because of injury to or destruction of property of others in any one occurrence, $50,000 for loss of means of support of any one person in any one occurrence, *and* $100,000 for loss of means of support of two or more persons in any one occurrence" (emphasis added)).

In addition, both the district court and the court of appeals rejected the reasoning from *Wohlsol* and *Peterson* that it would be incongruous to require licensees to carry at least $210,000 in insurance even though the same licensees could satisfy the statute by depositing $100,000 in cash and securities. According to the court of appeals:

> "[T]he [l]egislature, in its wisdom, may very well have decided that dram shops that have the ability to deposit a six figure sum should be treated differently than those relying on insurance, and that in so distinguishing the dram shops, the [l]egislature did not intend that distinction to impact the separate limits set for each distinct component of coverage in an insurance policy."

*Brua v. Minn. Joint Underwriting Ass'n,* No. A07–1866, 2008 WL 4705427, at *3 n. 2 (Minn.App. Oct. 28, 2008) (quoting with approval the district court's analysis). The court of appeals also declined to rely on

the Minnesota Department of Public Safety's website, reasoning that the language is too vague to suffice as an agency's interpretation of its own "regulation." *Id.* at *3 n. 3.

■ We agree with the district court and the court of appeals that each category of coverage must be cumulative, and we reject the analysis of *Wohlsol* and *Peterson.* The plain language of the statute supports this result. Minnesota Statutes § 340A.409, subdivision 1, sets out three categories of minimum coverage that are connected by the word "and." The result reached in *Wohlsol* and *Peterson* essentially rewrites the statute to include an "each common cause limit," limiting the minimum insurance coverage to a total of $100,000 per incident. If the legislature had wished to add such a provision, it could have easily done so. Moreover, there is nothing anomalous about requiring $210,000 in insurance coverage in lieu of $100,000 in security. The legislature is free to make such a choice. Finally, we agree with the court of appeals that the statement on the Minnesota Department of Public Safety's website is too confusing and unclear to qualify as an interpretation of Minn.Stat. § 340A.409, subd. 1, and to the extent that it qualifies as an interpretation, is at odds with the plain meaning of the statute.

Therefore, we conclude that Minn.Stat. § 340A.409, subd. 1, requires a minimum level of coverage of $50,000 per person and $100,000 per occurrence to cover claims for bodily injury for each person and each occurrence, and that this coverage may not be blended with other categories of damages.

### B.

■ MJUA next argues that even if Minn.Stat. § 340A.409, subd. 1, requires separate and cumulative limits for each category of damages, MJUA remains free to define bodily injury to include pecuniary loss. We disagree.

The relevant statutory provisions do not define the terms "bodily injury" or "pecuniary loss." But numerous cases of this court illustrate that pecuniary loss is not compensable as an injury to the person. *See, e.g., Johnson v. Consol. Freightways, Inc.,* 420 N.W.2d 608, 613 (Minn.1988); *Beck v. Groe,* 245 Minn. 28, 45, 70 N.W.2d 886, 897 (1955). Furthermore, we have stated that pecuniary loss includes damages for loss of advice, comfort, assistance, and protection. *See Jones v. Fisher,* 309 N.W.2d 726, 730 (Minn.1981); *Gravley v. Sea Gull Marine, Inc.,* 269 N.W.2d 896, 901 (Minn.1978); *see also* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil,* CIVJIG 45.45 (5th ed. 2006) (stating that pecuniary loss "is financial loss, but also includes loss of counsel, guidance, and aid"). Also, Minn. Stat. § 340A.801 categorizes pecuniary loss separately from bodily injury (i.e., injury to the person), indicating that however bodily injury is defined, that definition cannot include pecuniary loss. This distinction between the two types of claims is evidenced by Minn.Stat. § 340A.409, subd. 1, which requires a minimum amount of coverage for bodily injury, but not for pecuniary loss. Therefore, we agree with the district court that defining "bodily injury" in the policy to include pecuniary loss impermissibly dilutes the mandatory minimum coverage for bodily injury. To the extent that MJUA diluted the mandatory minimum coverage for bodily injury by subjecting bodily injury claims and pecuniary loss claims to the same $50,000 per person, $100,000 per occurrence limit, MJUA ran afoul of Minn.Stat. § 340A.409, subd. 1.

### C.

Having concluded that the MJUA policy provided less than the statutorily required

minimum coverage for bodily injury, the final issue to be resolved is the appropriate remedy.

■ When a provision of an insurance contract conflicts with a statute, we have "remedied a conflict between an insurance policy and the [statute] by reforming the insurance policy to provide at least the level of coverage provided for in the statute." *Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 689 (Minn.1997). Where a policy limit on coverage is insufficient to meet a statutorily required limit, we will adjust the limit in the policy. *Lewis v. Penn. Gen. Ins. Co.*, 391 N.W.2d 785, 790 (Minn.1986); *see also Dorn v. Liberty Mut. Fire Ins. Co.*, 401 N.W.2d 662, 663 (Minn.1987) (reforming an insurance contract to provide $25,000 in uninsured motorist coverage to a second person where the exhaustion of the policy's limits by another person violated a statute mandating $25,000 per person per accident).

■ Here, MJUA argues that the proper remedy would be to reform the policy to provide for $50,000 per person and $100,000 per occurrence coverage for bodily injury, and $50,000 per person and $100,000 per occurrence for pecuniary loss. We agree.

The MJUA policy provides the statutorily required insurance: coverage for bodily injury in the amount of $50,000 per person and $100,000 per accident, coverage for loss of means of support in the amount of $50,000 per person and $100,000 per accident, and $10,000 in property damage coverage. It also provides coverage for pecuniary loss, but does so by defining bodily injury to include pecuniary loss. By providing pecuniary loss coverage, the policy actually provides more coverage than required by statute, but does so by diluting the required amount of bodily injury coverage.

The district court correctly reasoned that if MJUA "is going to offer pecuniary loss coverage, the coverage must exist independent of unrelated coverages and cannot be merged with bodily injury coverage without defeating the intent of Minn.Stat. § 340A.409." But the district court then held, without analysis of the appropriate remedy for the statutory violation, that the dilution of the $50,000 per person $100,000 per occurrence limits rendered those limits void as to pecuniary loss.

Unlike the district court, the court of appeals concluded that because pecuniary loss was listed among the types of damages for which a plaintiff may recover under section 340A.801, a separate item of required coverage for pecuniary loss must be read into section 340A.409. *Brua v. Minn. Joint Underwriting Ass'n*, No. A07–1866, 2008 WL 4705427, at *3 (Minn. App. Oct. 28, 2008). According to the court of appeals, pecuniary loss coverage would then be limited only by the policy's aggregate limit. *Id.*

We conclude that, consistent with *Dorn v. Liberty Mutual Fire Insurance Co.*, 401 N.W.2d 662 (Minn.1987), the most the Bruas can achieve here is to have the diluted bodily injury coverage in the policy restored to undiluted form. In *Dorn*, a mother and her daughter were injured in an accident with an uninsured driver. *Id.* at 662–63. The daughter obtained the full amount of the benefits available under the uninsured motorist provision of her husband's insurance policy, which had a limit of $60,000 per person, per accident. *Id.* at 663. The insurer, however, was required by statute to provide uninsured motorist coverage of $25,000 per person and $50,000 per occurrence. *Id.* at 663–64. The mother later filed a claim under the policy seeking uninsured motorist benefits up to the policy limit of $60,000. *Id.* at 663. We determined that because the statute at

issue required a minimum of $25,000 of uninsured motorist coverage per person, the single policy limit of $60,000 could not be exhausted by one person. *Id.* at 663–64. Accordingly, we concluded that the policy must be rewritten to provide $25,000 of coverage to the mother, and to prevent one person from exhausting the policy limits to the exclusion of another. *Id.* at 664.

*Dorn* stands for the proposition that if an insurance policy does not meet a statutory requirement, the policy must be reformed to meet the statutory requirement. The MJUA policy improperly includes pecuniary loss under the definition of bodily injury, thereby diluting the required minimum bodily injury coverage of $50,000 per person, $100,000 per occurrence. Thus, to bring the policy into compliance with Minn.Stat. § 340A.409, subd. 1, we reform the contract so that bodily injury does not include pecuniary loss in its definition, making pecuniary loss and bodily injury coverage separate, each subject to all other terms of the policy. By doing this, the policy now provides the statutory minimum coverage for bodily injury: $50,000 per person, $100,000 per occurrence.

As reformed, pecuniary loss is now in a category separate from bodily injury. But we reform the policy only to the extent necessary to meet the statutory requirements, and no more. What is contrary to the statutory requirements is defining pecuniary loss as a type of bodily injury, thereby subjecting it to the same coverage limit as bodily injury. Placing a $50,000 per person, $100,000 per occurrence limit on pecuniary loss, as the policy has provided from the time it was issued to the insured in this case, however, is clearly not contrary to statutory requirements. Therefore, we establish pecuniary loss as its own separate category so that the minimum amount of statutorily required bodily injury coverage is available ($50,000 per

person and $100,000 per occurrence), but continue to subject pecuniary loss claims to a $50,000 per person, $100,000 per occurrence limit as provided for in the insurance contract, even though that limit is now separated from the $50,000 per person, $100,000 per occurrence limit for bodily injury claims. The remedy urged by the Bruas, and adopted by the district court, limiting pecuniary loss claims only by the $300,000 aggregate limit, results in a pecuniary loss limit not referenced anywhere in the policy.

In the settlement with the Bruas, MJUA paid $100,000 to the Bruas for their pecuniary loss claims. Because we have reformed the policy to provide for a maximum payment of $100,000 per occurrence for pecuniary loss claims and MJUA has already paid this maximum amount, MJUA is not liable for any additional payments to the Bruas.

We agree with the court of appeals that the district court did not err when it concluded that pecuniary loss cannot be merged with bodily injury coverage. We disagree that the $300,000 aggregate policy limit is the proper limit to be applied to pecuniary loss coverage under the policy. Therefore, we reverse the court of appeals.

Reversed.

PAGE, J., took no part in the consideration or decision of this case.