**In re the Matter of the Financial Responsibility for the Out–of–Home Placement Costs for S.M.**

**No. A10–2127.**

Court of Appeals of Minnesota.

May 31, 2011.

Robert D. Hinnenthal, Brown County Attorney, Tricia M.N. Lancaster, Assistant County Attorney, New Ulm, MN, for appellant Brown County Family Services Agency.

Gordon L. Moore III, Nobles County Attorney, Worthington, MN, for respondent Nobles County Family Services Agency.

Robert C. O'Connor, Jackson County Attorney, Sherry E. Haley, Assistant County Attorney, Jackson, MN, for respondent Jackson County Family Services Agency.

Steven S. Collins, Redwood County Attorney, Patrick R. Rohland, Assistant County Attorney, Redwood Falls, MN, for respondent Redwood County Family Services Agency.

Lori Swanson, Attorney General, Patricia A. Sonnenberg, Assistant Attorney General, St. Paul, MN, for respondent

Minnesota Department of Human Services.

Considered and decided by TOUSSAINT, Presiding Judge; CONNOLLY, Judge; and HARTEN, Judge.

## OPINION

HARTEN, Judge.*

The Minnesota Department of Human Services (MDHS) concluded that respondent Nobles County (Nobles) was financially responsible for social services provided to a child because it was the residence of the last parent with whom the child had lived. Respondent challenged that decision, and the district court concluded that appellant Brown County (Brown), the county in which the parent and the child last lived together, was financially responsible for the child's social services. Because we see no error of law in the district court's decision, we affirm.

## FACTS

S.M. was born in 1991. In January 2008, he moved from his father's residence in respondent Jackson County (Jackson)[1] to his mother's residence in Brown. From 5 February 2008 until 3 March 2008, he lived either with his mother in Brown or with a family friend in Redwood County (Redwood).

By 14 March 2008, S.M.'s mother had moved to Nobles, where she applied for social services. On 16 May 2008, Jackson placed S.M. in detention at a facility in Nobles; three days later, on 19 May, he was placed at a secure facility in Olmstead County until 27 May 2008.

Over the next two months, S.M.'s mother moved frequently. Nobles learned on 2 June 2008 that she was moving to her mother's (S.M.'s maternal grandmother's) home in Cottonwood County (Cottonwood), where she would stay until she moved to Sioux Falls, South Dakota. Nobles also learned (1) on 12 June that S.M.'s mother was in Sioux Falls; (2) on 30 June that she was living in Jackson; (3) on 7 July that she was again living with her mother in Cottonwood; and (4) on 29 July that she was living in Redwood.

On 27 June 2008, Jackson placed S.M. in shelter care at a facility in St. Peter, where he entered a treatment program on 25 July 2008. Jackson asked MDHS to resolve the issue of financial responsibility for S.M.'s services. On 15 September 2008, MDHS issued an order stating that Redwood was responsible for his medical assistance from 1 May 2008 to 30 June 2008 and that Nobles was responsible for medical assistance from 1 July 2008 to September 2008, for detention from 16 May to 27 May 2008, and for home monitoring costs from 27 May 2008 to 20 September 2008. This order was not appealed.

In January 2010, Jackson asked MDHS for a determination of financial responsibility for S.M.'s social services after 1 October 2008. On 20 April 2010, MDHS concluded that Nobles was and would be financially responsible until S.M. had resided in a nonexcluded time status in some other county for two full calendar months. Nobles appealed, and the district court

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Although Jackson County is listed as a respondent, neither appellant Brown County nor respondent Nobles County alleges that Jackson County is financially responsible for S.M.'s social services since October 2008. Jackson seeks reimbursement from one or the other of those counties.

concluded that, since 1 October 2008, Brown has been financially responsible for S.M.'s social services. Brown appeals.

## ISSUE

Does Minn.Stat. § 256G.10 (2010) make Brown responsible for the costs of S.M.'s social services?

## ANALYSIS

The application of a statute to the undisputed facts of a case is a legal conclusion that we review de novo. *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 5 (Minn. 2008). The relevant undisputed facts of this case are: (1) Brown, to which S.M. moved in January 2008 to live with his mother, is the county in which he last lived together with a parent; (2) on 16 May 2008, S.M. entered a residential facility; (3) on that date, S.M.'s mother lived in Nobles; and (4) S.M.'s mother has lived in various counties since that date.

The statute applicable to these facts is Minn.Stat. § 256G.10 (2010), providing that, for purposes of determining which county has financial responsibility for social services to a minor child, "[t]he residence of the parent of a minor child, with whom that child last lived in a nonexcluded time setting, ... shall determine the residence of the child." "Nonexcluded time" is time not spent in a correctional facility or in an institution. Minn.Stat. § 256G.02, subd. 6 (2010).

Minn.Stat. § 256G.10 is unambiguous as to which of a child's parents is meant: the parent "with whom that child last lived in a nonexcluded time setting." But the statute is ambiguous as to which county is meant by "residence of the parent": it could mean either the county in which the child last lived with a parent or the county of residence of the parent with whom the child last lived.

If a statute is ambiguous, this court will "apply other canons of construction to discern the legislature's intent." *Brua v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn.2010). These include "the occasion and necessity for the law," the circumstances of enactment, "the object to be attained," and "the mischief to be remedied." Minn.Stat. § 645.16(1)–(4) (2010).

The current version of Minn.Stat. § 256G.10 was enacted in response to *Cass Cnty. v. Wright Cnty.*, 493 N.W.2d 286 (Minn.App.1992) (*Cass County*). *Cass County* construed Minn.Stat. § 256G.10 (1990), the prior version of Minn.Stat. § 256G.10, which eliminated the common law of derivative settlement (minor child's residence is determined by parents' residence), to provide that the "residence of the parent ... does not determine the residence of the child." 493 N.W.2d at 289. *Cass County* applied the statute to conclude that the county financially responsible for a child's placement was the county where the child last resided before being placed. *Id.* Thus, under *Cass County* and the prior statute, neither the county where the child last resided with a parent (Nobles's position) nor the county of residence of the parent with whom the child last lived (Brown's position) was responsible for costs of the child's placement.

In 1996, four years after *Cass County*, the legislature amended the financial responsibility law to provide that the county financially responsible is "the residence of the parent of a minor child, with whom that child last lived in a nonexcluded time setting...." 1996 Minn. Laws ch. 451 art 2 § 51. Minn.Stat. § 256G.10 has not been construed by an appellate court since its 1996 amendment and presents a case of first impression.

In addition to applying the canons of construction, we must assume that the leg-

islature did not intend an absurd result. Minn.Stat. § 645.17(1) (2010). Construing Minn.Stat. § 256G.10 to mean that the county financially responsible for a child's social services is the county of residence of the child's parent could easily lead to such a result, for at least four reasons.

First, Minn.Stat. § 256G.10 does not provide any particular time at which the parent's residence is to be determined: it could be when the child is determined to be in need of services, or when the child is receiving services, or when financial responsibility for those services is decided.

Second, as happened here, the parent may move repeatedly from one county to another. If the county financially responsible for a child's services is the residence of the parent, a parent's moves would transfer responsibility from one county to another. If the parent moved out of the state, this construction would purport to move responsibility for the child out of the state as well.

Third, if the parent with whom the child most recently lived could not be found, determining which county is responsible for a child's services would be impossible.

Fourth, by virtue of a parent's residence, a county could become responsible for a child who never lived in it. This would construe the present Minn.Stat. § 256G.10 to reinstate the common law of derivative settlement, which the legislature eliminated by enacting the previous Minn. Stat. § 256G.10. *See Cass County,* 493 N.W.2d at 289 (discussing previous version of Minn.Stat. § 256G.10).

We agree with the district court's conclusion that financial responsibility for a child's social services "is determined based on where the parent and the child last resided together when the child was in a nonexcluded time setting." This construction resolves all four problems: it provides a specific time for determining residence, i.e., when the child and a parent last lived together; it makes the parent's subsequent moves irrelevant to the determination of financial responsibility; it does not require knowledge of the parent's present residence; and it would assign financial responsibility only for children who actually lived with a parent in that county.

Brown, where S.M. last lived with a parent, is financially responsible for his services.

## DECISION

Under Minn.Stat. § 256G.10 (2010), the county financially responsible for social services to a minor child is the county in which the child last lived together with a parent.

**Affirmed.**

