In the Matter of the WELFARE OF the Child of E.A.C., Parent.

No. A11–1562.

Court of Appeals of Minnesota.

Feb. 21, 2012.

Review Denied March 27, 2012.

---

Ronald M. Walters, Band Member Legal Aid, Onamia, MN, for appellant J.J.K.

James P. Ratz, Aitkin County Attorney, Sarah Winge, Assistant County Attorney, Aitkin, MN, for respondent Aitkin County Health & Human Services.

Raymond Horton, Horton Law Office, Aitkin, MN, for respondent J.M.C.

Michael P. Harralson, Deputy Solicitor General, Mille Lacs Band of Ojibwe, Onamia, MN, for respondent Mille Lacs Band of Ojibwe.

Shari S. Larson, Larson Law Office, McGregor, MN, for respondent guardian ad litem.

Bruce Jones, Jennifer Dukart, Faegre & Benson LLP, and Shannon Smith, ICWA Law Center, Minneapolis, MN, for amicus curiae ICWA Law Center.

Mary Jo Brooks Hunter, Child Advocacy Clinic, Hamline University School of Law, St. Paul, MN, for amicus curiae Hamline University School of Law Child Advocacy Clinic.

Considered and decided by KLAPHAKE, Presiding Judge; STONEBURNER, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

On appeal from the denial of a petition to return custody, appellant argues that (a) a challenge to a petition for return of custody under the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963 (2006), requires application of all subsections of section 1912 to determine whether reunification is not in the child's best interests, (b) the district court erred in concluding that remedial services provided to appellant five years ago satisfied ICWA's requirement to demonstrate active efforts to provide appellant remedial services, and (c) the district court erred in determining that no showing of harm to appellant's child was required under ICWA because appellant did not retain continued custody after voluntarily terminating her parental rights. Because (1) section 1916(a) requires district courts to apply all subsections of section 1912 in determining whether reunification is not in a child's best interests, (2) the district court erred in concluding that the active-efforts requirement under section 1912(d) was satisfied, and (3) the district court erred by making no findings under section 1912(f), we reverse and remand.

## FACTS

In 2004, child-protection proceedings began for J.M.C., an enrolled member of the Mille Lacs Band of Ojibwe (the Band), who is now 12 years old. A Crow Wing County social worker was assigned to J.M.C.'s child-protection case, and J.M.C. was removed from the care of appellant J.J.K., his biological mother, for approximately the third time. Between 2004 and 2006, J.M.C.'s behaviors included hitting, kicking, biting, bed wedding, involuntary defecation, sexual acting out, hurting animals, and damaging property. He was diagnosed with disruptive behavior disorder, separation anxiety disorder, and questionable borderline intellect. In 2006, appellant voluntarily terminated her parental rights to J.M.C. in Crow Wing County District Court.[1]

In 2008, J.M.C. was adopted by E.A.C. in Aitkin County District Court. However, on December 2, 2009, E.A.C. brought J.M.C. to respondent Aitkin County Health and Human Services (Aitkin County) seeking out-of-home placement for J.M.C. because she could no longer care for him. That same day, J.M.C. was placed into a foster home with D.J., who is Native American but who is not related to J.M.C. or a member of the Band. In June 2010, E.A.C. voluntarily terminated her parental rights to J.M.C. On July 29, 2010, Aitkin County sent notice to appellant that J.M.C.'s adoptive parent had voluntarily terminated her parental rights and that, pursuant to ICWA, 25 U.S.C. § 1916, appellant could petition for return of custody of J.M.C. On March 25, 2011, appellant filed a petition for return of custody. In response, Aitkin County filed a motion to dismiss or, in the alternative, for a determination that section 1912(d), (e), and (f) did not apply to appellant's petition. After a prehearing conference, the district court concluded that, based on the 2006 order terminating appellant's parental rights, the "active efforts" required by section 1912(d) "were made prior to that termination of

---

1. The district court judge who presided over appellant's 2006 termination of parental rights in Crow Wing County District Court also presided over the denial of appellant's petition to return custody in Aitkin County District Court, which is at issue here.

parental rights and, therefore, no further showing under this subparagraph shall be required." Additionally, the district court determined that "this is not a case disrupting 'continued custody' of the child by [appellant] and, therefore, no further showing under" section 1912(e) or (f) was required.

The district court held an evidentiary hearing to determine whether granting appellant's petition for return of custody was not in J.M.C.'s best interests. Four social workers and a guardian ad litem (GAL) testified. Appellant did not attend the evidentiary hearing, which the district court found reflected negatively on appellant and deprived it of critical information needed to determine the best interests of J.M.C. The district court found that J.M.C. requires 24–hour supervision due to inappropriate sexual behaviors with his siblings and while in E.A.C.'s home and that he was flourishing in the home of D.J., who wished to adopt J.M.C. Further, J.M.C.'s developmental delays require clear direction by an involved caregiver. The district court also found that J.M.C. had not expressed a desire to be reunited with appellant and that placement with D.J. was meeting J.M.C.'s day-to-day, special, and cultural needs.

In regard to appellant, the district court found that she entered in-patient chemical dependency treatment in 2007 after testing positive for intoxicants while pregnant with another child, she left the treatment program without completing it and against the advice of her treatment team, she has not maintained stable housing since 2006, she has had no contact with J.M.C. in the past five years, she has had difficulty following social-service case plans, and she faced pending criminal charges. In addition, respondent Mille Lacs Band Family Services did not support J.M.C. being immediately placed with appellant, though the Band asks on appeal that appellant's case be remanded for findings under section 1912. A Mille Lacs social worker testified that placing J.M.C. with appellant would require that appellant develop a plan of care with Mille Lacs Band Family Services, which appellant had not done, and that ultimately, placement would largely depend on how J.M.C. responded to reunification efforts. The district court dismissed appellant's petition, concluding that it had been proved beyond a reasonable doubt that returning J.M.C. to appellant's custody was not in the child's best interests.

Appellant moved for amended findings or, alternatively, a new trial, which the district court denied. This appeal follows.

## ISSUES

I.  Must all six subsections of 25 U.S.C. § 1912 be addressed by the district court when evaluating a petition to return custody brought under 25 U.S.C. § 1916(a)?

II. Was the requirement that "active efforts" be made to provide appellant remedial services satisfied pursuant to 25 U.S.C. § 1912(d)?

III. Must 25 U.S.C. § 1912(e) and 25 U.S.C. § 1912(f) be satisfied if appellant no longer has custody of J.M.C.?

## ANALYSIS

### I

Applying a statute to undisputed facts is a question of law that is reviewed de novo. *In re Welfare of Child of T.T.B. & G.W.*, 724 N.W.2d 300, 307 (Minn.2006). Statutory interpretation begins by determining "whether the statute's language, on its face, is clear or ambiguous." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). If the statute's language is unambiguous, the statute's plain meaning

is applied. *Brua v. Minn. Joint Underwriting Ass'n,* 778 N.W.2d 294, 300 (Minn. 2010). When the text of a law is plain and unambiguous, a reviewing court "must not engage in any further construction." *Gomon v. Northland Family Physicians, Ltd.,* 645 N.W.2d 413, 416 (Minn.2002).

"Congress enacted ICWA in 1978 to address the rising concern ... over the consequences ... of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *In re Welfare of R.S.,* 805 N.W.2d 44, 49 (Minn.2011) (quotation omitted). Among the rights afforded Indian families under ICWA is the right of a biological parent to petition the court to have custodial rights restored if the parent's child is subsequently adopted and the adoptive parent voluntarily terminates his or her parental rights. 25 U.S.C. § 1916. Specifically, section 1916(a) of ICWA provides that "whenever ... the adoptive parents voluntarily consent to the termination of their parental rights to the child, a biological parent ... may petition for return of custody and the court shall grant such petition unless there is a showing, *in a proceeding subject to the provisions of section 1912 of this title,* that such return of custody is not in the best interests of the child." 25 U.S.C. § 1916(a) (emphasis added). The primary dispute between the parties and thus the question we must answer in this appeal is what the phrase "in a proceeding subject to the provisions of section 1912 of this title" means.

The parties agree that ICWA is not ambiguous, but nevertheless differ on the meaning of the statute's plain language. Appellant, the Band, and amici ICWA Law Center and Hamline University School of Law Child Advocacy Clinic (Hamline) argue that the district court misconstrued

ICWA and erred by dismissing appellant's petition without addressing all of the subsections of section 1912. They assert that section 1916(a) must be read in conjunction with section 1912, which, they argue, requires the district court to apply section 1912(a)–(f) in evaluating appellant's petition for return of custody. 25 U.S.C. § 1916(a); 25 U.S.C. § 1912. To the contrary, respondents Aitkin County, guardian ad litem, and J.M.C. argue that the district court did not err and that a plain-language reading of ICWA renders subsections (d), (e), and (f) of section 1912 inapplicable to this case.

As stated previously, when an adoptive parent voluntarily consents to termination of parental rights, the biological parent may petition for return of custody under section 1916(a). If such a petition is challenged, the district court, "in a proceeding subject to the provisions of section 1912," must grant the petition unless it determines that a return of custody is not in the child's best interests. 25 U.S.C. § 1916(a). There are six requirements articulated in subsections (a)–(f) of section 1912. Only subsections (d)–(f) are at issue on appeal:

(d) Remedial services and rehabilitative programs; preventive measures

Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

(e) Foster care placement orders; evidence; determination of damage to child

No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that

the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

(f) Parental rights termination orders; evidence; determination of damage to child

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(d)–(f).

■ Minnesota caselaw does not address whether section 1916(a) requires the application of all subsections of section 1912 when a petition under ICWA for return of custody is challenged. But reviewing courts are required to harmonize a statute's provisions. *Owens v. Federated Mut. Implement & Hardware Ins. Co.*, 328 N.W.2d 162, 164 (Minn.1983). Statutes are to be construed as a whole and "in light of their context." *In re Welfare of Child of R.S.*, 805 N.W.2d at 51. Further, differing subsections of ICWA cannot be read in isolation. *Id.; see also State v. Gaiovnik*, 794 N.W.2d 643, 647 (Minn. 2011) ("When interpreting statutes, we do not examine different provisions in isolation.").

Appellant argues that the plain language of section 1916(a) establishes a clear procedure to determine whether reunification would not be in the child's best interests: application of the six subsections of section 1912. Appellant asserts that, by stating that a court shall grant the petition absent a showing "in a proceeding subject to the provisions of section 1912," the statute's plain language requires that *all* of the subsections must be evaluated in a petition for return of custody. To the contrary, respondent Aitkin County argues that, on these facts, ICWA does not require the application of section 1912(d), (e), and (f) because to do so leads to an illogical and absurd result. To demonstrate the alleged absurdity of applying these subsections to appellant's petition for return of custody, Aitkin County rewords subsections (d), (e), and (f) by adding the phrase "1916(a) Petition for return of custody" to each subsection. For example, Aitkin County would alter section 1912(d) to read: "Any party seeking to effect ... *a 1916(a) Petition for return of custody of* an Indian child under State law shall satisfy the court that active efforts have been made...." Aitkin County candidly acknowledges that this rewording of the statute shifts the burden of demonstrating active efforts to provide remedial services from the county to appellant—a result the county contends is appropriate—because appellant is the party "seeking to effect" the 1916(a) petition.

■ We reject the county's argument. To allow the county to rewrite the statute, and then to construe the statute based on the rewritten portion of the statute, would be inconsistent with the basic principles of statutory interpretation and particularly with the plain-language analysis urged by the county. Only Congress can alter federal statutes. *Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) (refusing to read absent word into statute when plain language of statute unambiguous); *U.S. Bank N.A. v. Cold Spring Granite Co.,* 788 N.W.2d 160, 166 (Minn.App.2010), *aff'd* 802 N.W.2d 363 (Minn.2011) ("[W]e are bound to apply the law as written."); *Beardsley v. Garcia,* 753 N.W.2d 735, 740 (Minn.2008) (declining to adopt interpretation of statute amounting to revision because "[t]he prerogative of amending a statute in such a fashion belongs to the legislature, not to this

court"); *Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 12 (Minn.2005) (reiterating that courts may not write into a statute what legislature did not); *Martinco v. Hastings*, 265 Minn. 490, 497, 122 N.W.2d 631, 638 (1963) ("If there is to be a change in the statute, it must come from the legislature, for the courts cannot supply that which the legislature purposefully omits or inadvertently overlooks.").

■ When applying a statute's plain language, we take care "to avoid absurd results and unjust consequences." *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 181 (Minn.2011) (quotation omitted). We see no obvious absurdity in the plain language of this statute. In addition, statutes intended to benefit Indians are to be construed liberally, which requires any doubt regarding the interpretation of ICWA to favor appellant. *See State v. Forge*, 262 N.W.2d 341, 347 (Minn.1977) (stating that "statutes passed for the benefit of dependent Indian tribes or communities are to be liberally construed, doubtful expressions being resolved in favor of the Indians" (quotation omitted)); *In re Welfare of S.N.R.*, 617 N.W.2d 77, 83 (Minn.App.2000) (stating that "ICWA is to be liberally construed in favor of a result that is consistent with ... furthering Congressional purposes in passing the statute") (quotation omitted), *review denied* (Minn. Nov. 15, 2000). Here, we are convinced that any doubt or confusion regarding the interpretation of these ICWA provisions has been manufactured by the county's rewording of the statute.

Respondent GAL argues that a plain-language reading of section 1912(d)–(f) reveals that the subsections do not apply because each subsection contains specific language that limits the application of the subsection to the circumstances described therein, and none of that language addresses a petition for return of custody.

For example, section 1912(d) states that "any party seeking to effect a foster care placement of, or termination of parental rights" shall demonstrate active efforts to provide remedial services. We acknowledge that notably absent from subsection (d) is any reference to petitions for return of custody. Similarly, neither subsection (e) nor (f) mentions petitions for return of custody. But the GAL's argument ignores the language in section 1916(a), which specifically directs district courts to apply "the provisions of section 1912" in evaluating a challenged petition for return of custody. In addition, reading sections 1916(a) and 1912 together gives effect to the requirement that we harmonize the provisions of a statute and construe statutes as a whole. *Owens*, 328 N.W.2d at 164; *In re Welfare of Child of R.S.*, 805 N.W.2d at 51. Further, nearly identical triggering language appears in subsections (a)–(c) of section 1912, which the GAL concedes do apply to a petition for return of custody, thus the GAL's argument exposes a significant inconsistency for which the GAL offers no explanation or resolution.

■ Reading section 1916(a) to require application of the requirements of section 1912 also is consistent with the legislative history and intent of ICWA, which was enacted to curtail the division of Indian families in light of the failure of states, when exercising jurisdiction over Indian child custody proceedings, to "recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 U.S.C. § 1901(4), (5) (2006). "[T]he purpose of the ICWA is, in part, to curtail state encroachment on the authority of the Indian tribes with respect to their children." *In re Welfare of S.N.R.*, 617 N.W.2d at 83; *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 37, 109 S.Ct. 1597, 1602, 104 L.Ed.2d 29

(1989) (stating that ICWA "seeks to protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society") (quoting H.R.Rep. No. 95–1386 at 23, reprinted in 1978 U.S.C.C.A.N. 7546); 805 N.W.2d at 64 (Anderson, J. dissenting) (citation omitted) ("ICWA was not intended merely to ensure that more Indian children ended up in Indian homes. Rather, it was a recognition that the fate of Indian tribes is tied to their own self-determination.").

The GAL's argument fails for another reason. Followed to its logical end, adherence to the triggering language in each subsection of section 1912 would prevent a party from contesting a petition for return of custody, which is contrary to the statute's plain language. Section 1916(a) functionally creates a presumption in favor of the parent who petitions for return of custody of an Indian child by stating that such a petition will be granted "*unless* there is a showing, in a proceeding subject to the provisions of section 1912 . . ., that such return of custody is not in the best interests of the child." 25 U.S.C. § 1916(a) (emphasis added). But each of the six subsections of section 1912 refers either to the term "foster care placement" or "termination of parental rights."[2] If the subsections of 1912 apply only to the specifically enumerated proceedings of foster care placement or termination of parental rights, then a party could not challenge the petition based on the child's best interests unless the petition resulted from a foster-

care placement or termination of parental rights. But section 1916(a) allows a petition for return of custody only when a final decree of adoption has been vacated or set aside or when the adoptive parents voluntarily consent to the termination of parental rights, as occurred here. Therefore, to adhere to the triggering language in each subsection of section 1912 would eliminate the ability to demonstrate that returning custody is not in the child's best interests and thereby overcome the presumption favoring the parent. This result would run counter to the procedure clearly laid out in section 1916(a) to demonstrate that reunification with the biological parent is not in the child's best interests.

■ Accordingly, we agree with appellant that the plain language of section 1916(a) requires that all provisions of section 1912 must be applied when a petition for return of custody is challenged. Here, E.A.C. adopted J.M.C. but later terminated her right to parent J.M.C., and appellant, as J.M.C.'s biological mother, petitioned for return of custody. Section 1916(a) provides that custody of an Indian child "shall" be returned to a petitioning biological parent unless the district court "in a proceeding subject to the provisions of section 1912 of this title" determines that a showing has been made that return of custody is not in the child's best interests. 25 U.S.C.1916(a). By directing district courts to section 1912 to determine whether returning custody is not in the child's best interests, section 1916(a) dic-

---

**2.** *In re Welfare of Child of R.S.* concluded that, by using certain child-custody terms and not others in 25 U.S.C. § 1911(b) (2006), Congress drew a distinction between the terms it used—foster care placement and termination of parental rights—and the terms it did not—preadoptive placement and adoptive placement. 805 N.W.2d at 51. Because of the unambiguous language in section 1916(a), which directly references section 1912, we read no such distinction between the terms used in 25 U.S.C. § 1912(d)–(f)—foster care placement and termination of parental rights—and a petition for return of custody. Thus, although *In re Welfare of Child of R.S.* is instructive, it is not determinative of the result here.

tates the criteria a party challenging a petition must satisfy.

■ In addition, applying all of section 1912's subsections to a challenged return-of-custody petition comports with the only other known published case on point, *A.B.M. v. M.H.*, 651 P.2d 1170 (Alaska 1982). Though opinions from courts of other states are not binding on Minnesota courts, they may have persuasive value. *Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 861 (Minn.1984). In *A.B.M.*, a biological Indian mother petitioned for return of custody after the adoption to which she had agreed was vacated. 651 P.2d at 1171–72. Construing the plain language of section 1916(a), the Alaska Supreme Court stated that when a biological parent's petition for return of custody is challenged, "the hearing to determine whether the petitioner regains custody must meet the requirements of section 1912." *Id.* at 1175. Aitkin County and the GAL argue that *A.B.M.* is distinguishable because A.B.M., unlike appellant, had not previously terminated her parental rights, had not been the subject of child-protection proceedings, and revoked her consent to the adoption of her child. Admittedly, the procedural posture here is different from that in *A.B.M.* But nothing in section 1912 limits its application to any particular type of proceeding; the county's implicit suggestion that only certain biological parents are entitled to petition for return of custody has no support in either section 1916 or section 1912. Additionally, as amicus Hamline argues, the facts in *A.B.M.* are similar to the facts here on a key point: both cases involve a failed adoption, which resulted in a petition by the biological Indian parent pursuant to section 1916(a) for return of custody.

Finally, Aitkin County, the GAL, and J.M.C. argue that requiring Aitkin County to provide remedial services or demonstrate harm to J.M.C. in returning him to appellant's home would be absurd. In particular, Aitkin County asserts that it would be irrational for Aitkin County to provide services to appellant, who does not reside in Aitkin County, who has not requested services from the county despite it having custody over J.M.C. since 2009, and who provided no evidence to show improvement since she failed a Crow Wing County case plan approximately five years ago. However, these arguments ignore the requirements imposed on Aitkin County by ICWA, and instead appear to go to the merits of whether appellant is a fit parent and whether the county desires to provide her services—issues which are not before this court. And though we are not unsympathetic to the potential burden placed on Aitkin County, we are obligated to follow the law.

## II

Under section 1912(d), the agency seeking to place an Indian child in foster care must show that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d). ICWA does not define active efforts, but the Minnesota Tribal/State Indian Child Welfare Agreement defines active efforts as "a rigorous and concerted level of case work that uses the prevailing social and cultural values, conditions and way of life of the Indian child's tribe to preserve the child's family and to prevent placement of an Indian child." Minn. Tribal/State Indian Child Welfare Agreement at 9 (Feb. 22, 2007), *available at* https://edocs.dhs.state.mn.us/1fserver/Legacy/DHS–5022–ENG. The agreement notes that active efforts pursuant to ICWA constitute a standard higher than the rea-

sonable efforts required to reunify a family under Minn.Stat. § 260.012(c) (2006). *Id.*

■ As an initial matter, respondent GAL argues that the burden of proof in demonstrating active efforts should be on appellant because she is asking, by petitioning for return of custody, for Aitkin County to prove what is in J.M.C.'s best interests after appellant voluntarily terminated her parental rights. However, the burden of proof to determine whether active efforts have been made is beyond a reasonable doubt and rests with the agency responsible for providing the remedial services. *See In re Welfare of M.S.S.,* 465 N.W.2d 412, 418 (Minn.App.1991) (applying beyond-a-reasonable-doubt standard from section 1912(f) to section 1912(d) for termination-of-parental-rights proceeding based on ICWA policy to unify Indian families). Therefore, we reject the GAL's argument.

■ Appellant argues that the active-efforts requirement was not satisfied because the district court relied solely on the 2006 order voluntarily terminating appellant's parental rights. The 2006 order terminating appellant's parental rights stated that active efforts had been made to avoid placing J.M.C. in out-of-home care, but the order did not identify the nature of the services provided. As appellant correctly notes, in determining that the active-efforts requirement was satisfied, the district court referenced only the efforts in the 2006 order. But the 2006 order is five years old, and thus it cannot possibly take into account the currently available resources of the family or the tribe. *See id.* at 418–19 (requiring assessment of prevailing conditions and available resources); Minn. Tribal/State Indian Child Welfare Agreement at 9. In addition, the district court's determination does not indicate whether the active efforts previously made were unsuccessful, as required by subsec-

tion (d). Because the district court's conclusion is insufficient for a lack of active-efforts findings, we reverse and remand for appropriate findings under section 1912(d).

### III

■ ICWA requires two additional showings under sections 1912(e) and (f): (1) a determination that is "supported by *clear and convincing evidence,*" which includes expert witness testimony, "that the continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child" and (2) a determination "*beyond a reasonable doubt,*" including qualified expert witness testimony, "that the continued custody of the child by the parent ... is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(e)–(f) (emphasis added). We resolve these differing burdens of proof by holding that the higher, beyond-a-reasonable-doubt burden applies to the finding required under subsection (f) when a petition for return of custody pursuant to section 1916(a) is challenged.

Applying the higher burden of proof properly harmonizes the differences in the two subsections, *Owens,* 328 N.W.2d at 164, because a finding beyond a reasonable doubt under section 1912(f) that "continued custody" of the child by the parent is likely to result in serious harm to the child will satisfy the beyond-a-reasonable-doubt standard, as well as the clear-and-convincing-evidence standard of section 1912(e). Applying the higher beyond-a-reasonable-doubt standard also reinforces ICWA's preference for reunification and is consistent with the policy of avoiding removal of Indian children from their families. *See* 25 U.S.C. § 1916(a) (requiring district court to grant petition for return of custody "*unless there is a showing,* in a pro-

ceeding subject to the provisions of section 1912 of this title, that such return of custody is not in the best interests of the child") (emphasis added); 25 U.S.C. § 1901(4) (recognizing "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children"). Further, ruling that a finding that "continued custody" is likely to result in serious harm to the child must be supported by evidence beyond a reasonable doubt is consistent with the Alaska Supreme Court's conclusion in *A.B.M.*, which applied the higher burden of proof found in section 1912(f). *A.B.M.*, 651 P.2d at 1175. Thus, we conclude that the district court applied the correct standard of proof when it ruled that "the evidence presented proves beyond a reasonable doubt that the return of custody of the subject child to the [p]etitioner is not in the child's best interests."

For two reasons, however, we also conclude that a remand on this point is still required. First, the district court misread the "continued custody" requirement when it ruled that, because appellant voluntarily terminated her parental rights, "this is not a case disrupting 'continued custody' of the child" by the child's biological parent, and therefore that findings under section 1912(e) or (f) were not required. The "continued custody" language in section 1912(f) does not require that the biological parent have custody of the child at the start of the proceeding in question. *See In re Welfare of W.R.*, 379 N.W.2d 544, 549 (Minn.App.1985) (concluding "continued custody" in subsection (f) does not impose a custodial requirement when children are not in a parent's custody at the start of termination proceedings because imposing that requirement could expose children to neglect), *review denied* (Minn. Feb. 19, 1986). As noted by appellant, this reading of the statute is consistent with the idea

that, even though a parent generally does not have custody of his or her children at the time of termination proceedings occurring under ICWA, courts still analyze whether "the *continued custody* of the child by the parent ... is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(f) (emphasis added); *see also In re Welfare of R.M.M. III*, 316 N.W.2d 538, 541 (Minn.1982) (imposing section 1912(f) requirement in termination proceeding when child had been in foster care for more than two years).

Second, while the district court found beyond a reasonable doubt that return of the child was not in his best interests, this finding is insufficient because the district court did not make the finding required by section 1912(f) that the child is likely to face serious emotional or physical damage if reunited with the parent—a finding that the statute requires be supported by the testimony of qualified expert witnesses. 25 U.S.C. § 1912(f). Aitkin County argues that testimony provided by witnesses effectively satisfied the statute's expert requirements. Even assuming this to be true, the district court was nevertheless obligated to make specific findings on the potential for serious emotional or physical harm in order to support its conclusion that the evidence proved beyond a reasonable doubt that the return of custody to appellant was not in J.M.C.'s best interest. Because that did not occur here, we reverse and remand for the requisite findings.

## DECISION

Because (1) the district court must apply all subsections of 25 U.S.C. § 1912 to a challenged petition for return of custody to determine whether reunification is not in the child's best interests; (2) the district court made no findings under section 1912(d) and its active-efforts conclusion is

insufficient; and (3) it failed to make the requisite findings under section 1912(f), we reverse and remand for proceedings consistent with this opinion.

**Reversed and remanded.**