# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2021 ND 106

In the Interest of K.B., a child

| | |
|---|---|
| Megan Dahl, L.B.S.W., Cass County Human Services Zone, | Petitioner and Appellee |
| v. | |
| K.B., child; M.N., possible father; John Doe, | Respondents |
| and | |
| J.B., mother, | Respondent and Appellant |

### No. 20210109

In the Interest of K.B., a child

| | |
|---|---|
| Megan Dahl, L.B.S.W., Cass County Human Services Zone, | Petitioner and Appellee |
| v. | |
| K.E.B., child; M.N., possible father; John Doe, | Respondents |
| and | |
| J.B., mother, | Respondent and Appellant |

### No. 20210110

Appeal from the Juvenile Court of Cass County, East Central Judicial District, the Honorable Scott A. Griffeth, Judicial Referee.

REMANDED.

Opinion of the Court by Tufte, Justice, in which Justices VandeWalle, Crothers, and McEvers joined. Chief Justice Jensen filed an opinion concurring specially.

Constance L. Cleveland, Assistant State's Attorney, Fargo, N.D., for petitioner and appellee; submitted on brief.

Daniel E. Gast, Fargo, N.D., for respondent and appellant; submitted on brief.

**Tufte, Justice.**

[¶1]   J.B. appeals a juvenile court order terminating her parental rights. On appeal, J.B. argues that the district court erred in terminating her parental rights, because the qualified expert witness's testimony did not satisfy the Indian Child Welfare Act (ICWA). We retain jurisdiction and remand for further proceedings.

I

[¶2]   J.B. is the mother of two children, K.B. and K.E.B. A social services assessment was prompted by reports that K.B. had tested positive for methamphetamines at birth and had a low birth weight and that J.B. had not attended any follow-up medical appointments after K.B.'s birth. K.B. was placed into social services custody in November of 2019 for up to 9 months after J.B. admitted that K.B. was a deprived child. Prior to K.B.'s removal, J.B. had visited with a social worker and admitted to a relapse in drug use. The social worker noticed that J.B. had a black eye and bruising during this visit, and J.B. told her she had been attacked by M.N., the possible father of K.B. While K.B. was removed from J.B.'s custody, J.B. gave birth to K.E.B. During her pregnancy, J.B. was using drugs, did not engage in treatment, and did not follow up with prenatal care as advised by her doctor at her initial prenatal appointment. Social services took custody of K.E.B. at birth, and she also tested positive for methamphetamines. During this period, J.B. had her probation revoked and was sentenced to incarceration through May of 2022 with her first consideration for parole in May 2021. Both children are eligible to be enrolled in the Turtle Mountain Band of Chippewa.

[¶3]   The juvenile court received testimony from Marilyn Poitra, a qualified expert witness under ICWA. Poitra testified that the tribe could exercise jurisdiction over this action and did not support termination, but the tribe did not wish to exercise its jurisdiction. Poitra further testified about the tribe's customs as they relate to family organization and acceptable child rearing practices, concluding that J.B.'s conduct was not consistent with those

practices. Poitra testified that termination was not necessary at that time to prevent physical damage to the children, based on her belief that J.B. would no longer be incarcerated as of May of 2021 and that J.B. was not having contact with M.N.

## II

[¶4] The juvenile court may terminate an individual's parental rights to a child if: (1) the child is a deprived child; (2) the conditions and causes of the deprivation are likely to continue; and (3) the child is suffering or will in the future probably suffer serious physical, mental, moral, or emotional harm. *In re K.S.D.*, 2017 ND 289, ¶ 7, 904 N.W.2d 479 (citing N.D.C.C. § 27-20-44(1)(c)(1)). The party seeking termination of parental rights must prove all elements by clear and convincing evidence. *Id.* In addition to state law requirements, the requirements of the Indian Child Welfare Act, 25 U.S.C. § 1912, must be met in cases involving an Indian child as defined by the Act. 25 U.S.C. § 1903(4); *In re K.S.D.*, at ¶ 17.

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f).

[¶5] On appeal, J.B.'s only argument is that the juvenile court erred in terminating her parental rights because the testimony of the qualified expert witness was insufficient to satisfy the requirements of ICWA. J.B. does not dispute there was clear and convincing evidence that the children were deprived, that the causes of the deprivation are likely to continue, and that the children are suffering, or will in the future probably suffer, serious physical, mental, moral or emotional harm.

[¶6] We apply the clearly erroneous standard of review to the juvenile court's findings. *Interest of A.L.E.*, 2018 ND 257, ¶ 4, 920 N.W.2d 461 (citing *Interest*

2

*of A.B.*, 2017 ND 178, ¶ 12, 898 N.W.2d 676). Under the clearly erroneous standard of review, we affirm the decision of the juvenile court unless it is induced by an erroneous view of the law, there is no evidence to support it, or, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶7] ICWA requires the court's determination be supported by evidence beyond a reasonable doubt, including the testimony of a qualified expert witness, that continued custody by the parent is likely to result in serious emotional or physical damage to the child. J.B. argues that Poitra's testimony does not satisfy ICWA's requirements because she testified that termination would result in serious emotional damage to the children and that there would not be any physical damage to the children if the court did not terminate parental rights at that time. "The findings of a likelihood of serious emotional or physical damage are findings that must be made by the trial judge, not the expert witness." *Marcia V. v. Office of Children's Servs.*, 201 P.3d 496, 508 (Alaska 2009). In addition to extensive testimony about ancillary facts, Poitra answered two questions asking her to summarize her opinion relating to this ICWA requirement. Initially, on direct examination, Poitra was asked "is custody of the children K.E.B. and K.B. by the parents likely to cause serious emotional or physical damage to the children?" Poitra responded, "I believe that because mom's incarcerated, she can't care for her children." After an interruption, she continued, "I believe it would have been a different situation if she wasn't incarcerated." Later, on cross examination, Poitra confirmed she believed "there wouldn't be any damage to the children if the Court does not terminate at this time." The first question was framed in terms of ICWA, focusing on whether "continued custody of the child by the parent" is likely to result in damage to the child. The second focused on the current custody and placement, in which the children are not in J.B.'s custody, and whether Poitra believes harm will come to the children if the current arrangement continues.

[¶8] Poitra testified that she believed J.B. would be released in May of 2021. On further questioning, Poitra acknowledged she was not aware that J.B.'s good time release date was not until May of 2022. "When a parent, through voluntary actions, without reasonable justification, makes herself unavailable

3

to care for and parent a young child, the child should not be expected to wait or assume the risk involved in waiting for permanency and stability in her life." *A.L.E.*, 2018 ND 257, ¶ 12 (citations omitted).

[¶9]   Poitra also testified that if J.B. continued her relationship with M.N., she would be concerned that the domestic violence and drug use would continue. After Poitra testified, the juvenile court received into evidence screenshots of notes being shared back and forth between J.B. and M.N. These screenshots were taken during a recess in the proceedings when J.B. and M.N. were communicating through the videoconferencing software by holding up handwritten notes, apparently unaware that all attendees could see their messages. J.B. stated to M.N. that she loved him and still wanted a son, and asked for his contact information. M.N. told J.B. there was a no-contact order, but then provided his email address anyway and told J.B. he was thinking about her.

[¶10] The juvenile court found that the evidence presented did not support either of the assumptions relied on by Poitra as the basis for opposition to the termination of J.B.'s parental rights. Specifically, the court found J.B.'s release from prison and availability to parent was not imminent and J.B. had not ended her relationship with M.N. The court found that the best case scenario for reunification was 8 to 20 months in the future and that the screenshots of their communication indicated J.B.'s and M.N.'s intention to continue involvement with each other. The court introduced its findings by paraphrasing the ICWA requirement for "proof beyond a reasonable doubt that the children are deprived . . . the deprivation is likely to continue or will not be remedied, and that by reason thereof the children are suffering or will probably suffer serious physical, mental, moral, or emotional harm . . . ." This may suggest the statutory requirement for a finding beyond a reasonable doubt that "the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." Because children are entitled to permanency and because ICWA presents an opportunity for collateral attack of a state court judgment if its requirements are not met, we will not strain to infer findings from a vague reference to the requirement. *See Interest of K.S.D.*, 2017 ND 289, ¶ 28, 904 N.W.2d 479; *Shark*

4

*v. Thompson*, 373 N.W.2d 859, 869 (N.D. 1985). A qualified expert witness's expressed preference to deny termination of parental rights does not preclude the court from making findings sufficient to satisfy ICWA and ordering termination. *See Marcia V.*, 201 P.3d at 508 (holding the qualified expert witness testimony must be "some of the evidence" supporting findings in an ICWA termination matter, but "does not need to be the sole basis for that finding; it simply must support it").

## III

[¶11] We retain jurisdiction under N.D.R.App.P. 35(a)(3) and remand for the juvenile court to make detailed findings under ICWA. The juvenile court may receive additional evidence if necessary to make the required findings, provided any further proceedings are completed within 45 days.

[¶12]  Gerald W. VandeWalle
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte


**Jensen, Chief Justice, concurring specially.**

[¶13] On appeal, J.B. argues that the juvenile court erred in terminating her parental rights because the expert witness's testimony did not satisfy the requirements of the Indian Child Welfare Act (ICWA). Specifically, she contends the expert witness did not provide testimony supporting a finding that "the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child" as required by 25 U.S.C. § 1912(f). Because the court's order does not include the required ICWA finding, and the record contains contradictory testimony from a qualified expert on whether "the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child," this case must be remanded for further findings and afford the juvenile court discretion to receive further evidence.

5

# I

[¶14] J.B. argues the record does not contain supporting testimony from a qualified expert that "the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child" as required by 25 U.S.C. § 1912(f). The statutory provision at issue reads as follows:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f).

[¶15] Before termination of parental rights, a juvenile court is compelled to "make the finding required by section 1912(f) that the child is likely to face serious emotional or physical damage if reunited with the parent—a finding that the statute requires be supported by the testimony of qualified expert witnesses." *In re Welfare of Child of E.A.C.*, 812 N.W.2d 165, 176 (Minn. Ct. App. 2012) (citing 25 U.S.C. § 1912(f)). Even where the record may contain supporting qualified expert testimony, the court was "nevertheless obligated to make specific findings on the potential for serious emotional or physical harm in order to support its conclusion that the evidence proved beyond a reasonable doubt" that termination was appropriate. *Id.*

[¶16] The juvenile court's order does not meet the statutory requirements of 25 U.S.C. § 1912(f). The entirety of the juvenile court's discussion pertaining to the testimony of the expert witness is confined to two paragraphs of the order terminating J.B.'s parental rights. However, neither paragraph provides any reference to whether the expert provided testimony supporting the required § 1912(f) finding. The court order starts with a boilerplate statement of law without a reference to ICWA:

> The Court finds by proof beyond a reasonable doubt that the children are deprived within the meaning of N.D.C.C. §27-20-02,

6

in that the children are without proper parental care, control, subsistence or education as required by law or other care or control necessary for the children's physical, mental or emotional health or morals, the deprivation is not due primarily to the lack of financial means of the parents of the children, the deprivation is likely to continue or will not be remedied, and that by reason thereof the children are suffering or will probably suffer serious physical, mental, moral, or emotional harm as follows:

[¶17] The above boilerplate statement of the law is then followed by findings "a" through "m." Finding "l" makes the first reference to the testimony of the qualified expert. The reference to the qualified expert in finding "l" is focused on explaining why the juvenile court was rejecting the broader opinion of the qualified expert that J.B.'s parental rights should not be terminated and rejecting the tribe's desire not to have J.B.'s parental rights terminated. Finding "l" does not reference 25 U.S.C. § 1912(f) nor does it provide any indication that the qualified expert testified whether "the children are suffering or will probably suffer serious physical, mental, moral, or emotional harm." The second, and final, reference to the testimony of the qualified expert is found near the end of the order. Again, there is no reference to § 1912(f) nor whether the qualified expert provided testimony supporting whether the children are suffering or will probably suffer serious physical, mental, moral, or emotional harm.

[¶18] Before terminating J.B.'s parental rights, the juvenile court was compelled, under 25 U.S.C. § 1912(f), to make the finding that J.B.'s children are likely to face serious emotional or physical damage if reunited with J.B.— a finding that the statute requires be supported by the testimony of qualified expert witnesses. *In re E.A.C.*, 812 N.W.2d 165, 176 (Minn. Ct. App. 2012). However, the order does not provide the finding as required by § 1912(f).

[¶19] The boilerplate statement of law contained the exclusive reference within the entire order whether the children will suffer "serious physical, mental, moral, or emotional harm." A boilerplate statement of the law referencing findings that are to follow, which is not followed by any findings related to the 25 U.S.C. § 1912(f) required finding, is insufficient on its face.

7

## II

[¶20] The problem with the order goes beyond the mere failure to identify testimony from a qualified expert supporting a finding that testimony the children are suffering or will probably suffer serious physical, mental, moral, or emotional harm. As noted below, the qualified expert's testimony included directly contradictory evidence to making the finding required by 25 U.S.C. § 1912(f), and the order fails to address the contradictory testimony.

[¶21] A qualified expert's testimony is not required to opine on the ultimate issue of whether the State met its burden of proof or provide the sole basis for a court's conclusion that continued custody of the child by the parent will likely result in serious emotional or physical damage; ICWA simply requires that the expert's testimony support the juvenile court's conclusion. *E.A. v. State Div. of Family & Youth Servs.*, 46 P.3d 986, 992 (Alaska 2002); *In re M.F.*, 225 P.3d 1177, 1186 (Kan. 2010); *State ex rel. State Office for Servs. to Children & Families v. Lucas*, 33 P.3d 1001, 1005 (Or. Ct. App. 2001); *Brenda O. v. Arizona Dep't of Econ. Sec.*, 244 P.3d 574, 579 (Ariz. Ct. App. 2010); *Matter of IW*, 419 P.3d 362, 366 (Okla. Civ. App. 2017); *see also Thomas H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 184 P.3d 9, 17 (Alaska 2008) ("ICWA requires that expert testimony support a decision to terminate parental rights, based upon the particular facts and issues of the case.") (internal quotation marks omitted).

[¶22] Even if the order is not viewed as deficient on its face, the qualified expert's testimony was at best contradictory to the required finding. With regard to the finding required by 25 U.S.C. § 1912(f) the qualified expert testified as follows:

> Q. Do you think that absent a termination, would that result in serious emotional damage to the children?
>
> A. If the termination — if the termination took place, yes.
>
> Q. If the termination took place, it would result in serious emotional damage to the children?

8

A. That's correct.

Q. Okay. So what about serious physical damage? Is a termination required to avoid serious physical damage to the children?

A. I would believe so, I guess.

Q. Wait. You think that the Court has to terminate to avoid serious physical damage?

A. No.

Q. So it's not necessary to avoid —

A. No, it isn't.

Q. You think that there wouldn't be any damage to the children if the Court does not terminate at this time?

A. That's correct.

[¶23] The qualified expert's testimony in this case does not clearly support a finding that "the children are suffering or will probably suffer serious physical, mental, moral, or emotional harm." To the contrary, the testimony included unambiguous assertions that termination is not required to avoid serious physical damage and expressly provides that termination will cause serious emotional damage. Even if the order could be construed to contain the required finding, the above testimony cannot be construed as clearly supportive of the required finding. The order, on remand, should consider the inconsistencies and identify the evidence supporting a finding that the continued custody was likely to result in serious emotional or physical damage to the children, a showing required by 25 U.S.C. § 1912(f).

III

[¶24] The juvenile court engaged in a process of what can be characterized as impeachment of the qualified expert's testimony. As noted above, the court did not provide any discussion of the qualified expert's testimony on the issue of whether, absent termination, the children were likely to suffer serious

9

emotional or physical damage as required by 25 U.S.C. § 1912(f). The court, in an apparent explanation on why it was making findings contrary to the qualified expert's opinion on the broader issue of termination, provided the following:

> Testimony indicated that the tribe is not in favor of termination of parental rights. This position was based upon [J.B.'s] imminent availability to parent and [J.B.'s] disassociation with [father]. Witnesses testified to the existence of a no-contact order between [J.B.] and [father] at the time of trial. The evidence does not support either of the conditions asserted by the tribe as the basis for their opposition to termination of parental rights.

This does not address the finding required by § 1912(f), but addresses the broader issue of termination. Even when the record itself contains testimony from a qualified expert that could support the required finding, the court "was nevertheless obligated to make specific findings on the potential for serious emotional or physical harm in order to support its conclusion that the evidence proved beyond a reasonable doubt" that termination was appropriate. *In Re Welfare of Child of E.A.C.*, 812 N.W.2d 165, 176 (Minn. Ct. App. 2012). Explaining why the expert's opinion on the broader issue of termination was being rejected is insufficient to satisfy the requirement to provide a specific finding on the potential for serious emotional or physical harm. The majority reasonably notes the record could be read in a manner to make a sufficient finding. Regardless of how the record is read, the court did not make the required specific finding.

[¶25] It is not nearly enough to simply call an expert witness to satisfy the requirement under 25 U.S.C. § 1912(f). The juvenile court was compelled to "make the finding required by section 1912(f) that the child is likely to face serious emotional or physical damage if reunited with the parent—a finding that the statute requires be supported by the testimony of qualified expert witnesses." *In re E.A.C.*, 812 N.W.2d 165, 176 (Minn. Ct. App. 2012) (citing 25 U.S.C. § 1912(f)). The court was "obligated to make specific findings" on that issue. *Id*. No such finding was made and, even if such a finding had been made,

there is an absence of an explanation of how the finding was supported by the qualified expert's testimony as required by § 1912(f).

[¶26] The Nebraska Court of Appeals has recently provided the following summary of the testimony required to satisfy 25 U.S.C. § 1912(f):

> Pursuant to NICWA, before a court may terminate a parent's rights to their child or children, the State must prove by evidence, beyond a reasonable doubt, "including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." This evidence must be established by qualified expert testimony provided by a professional person having substantial education and experience in the area of his or her specialty.

*In re Int. of Audrey T.*, 924 N.W.2d 72, 81 (Neb. Ct. App. 2019), review denied (Apr. 10, 2019) (citations omitted). This summary is consistent with the Guidelines for State Courts which reads as follows:

> (a) Removal of an Indian child from his or her family must be based on competent testimony from one or more experts qualified to speak specifically to the issue of whether continued custody by the parents or Indian custodians is likely to result in serious physical or emotional damage to the child.

Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584, 67593 (1979) (not codified).

[¶27] The statute establishes an evidentiary burden. To terminate parental rights under ICWA, supporting evidence from a qualified expert witness is required on the issue of whether the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. The expert witness in this case at times testified contrary to the required finding. The opinion of the expert was likely based on incorrect assumptions, as noted by the majority opinion and the juvenile court. However, discrediting the qualified expert's opinion does not convert the opinion into supporting testimony.

[¶28] This case provides an example of ICWA's unintended adverse consequences on children. ICWA seeks to keep Indian children with Indian families. Part of the statutory scheme to preserve the parental rights of native parents is 25 U.S.C. § 1912(f), which requires not only proof beyond a reasonable doubt that the children are likely to face serious emotional or physical damage if reunited with the parent but also requires supporting qualified expert testimony on that finding. The directive of the Act is clear, you cannot terminate parental rights in cases where ICWA applies without qualified expert testimony that continued custody by the parent(s) will (or is likely) to result in emotional or physical harm to the children. Despite the persuasive evidence in this case that parental rights termination is appropriate, the statutory burden established by § 1912(f) requires an express finding supported by testimony of a qualified expert. We cannot change, modify, ignore or work around the clear directive of § 1912(f) requiring supporting testimony of a qualified expert. In this case, the qualified expert testimony required by § 1912(f) is at best contradictory and compels the case to be remanded for further findings.

[¶29] Jon J. Jensen, C.J.